William Douglas White #224592
McCarthy & White, PLLC
8205 Pettit Court
McLean, VA 22102
703-770-9265
wdw@mccarthywhite.com
Trustee for Estate of ETS

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 20-00397-ELG |
| | ) | (Chapter 7) |
| ETS of Washington LLC | ) | |
| | ) | |
| DEBTOR. | ) | |
| _____ | ) | |
| | ) | |
| Estate of ETS of Washington LLC, | ) | |
| William Douglas White, Trustee | ) | |
| | ) | A.P.  No. 21-10005-ELG |
| Plaintiff / Counter-Defendant, | ) | |
| v. | ) | |
| | ) | |
| WCP Fund I LLC, 1Sharpe Opportunity | ) | |
| Intermediate Trust, and DP Capital LLC | ) | |
| | ) | |
| Defendants / Counterclaimants | ) | |

### MOTION TO APPROVE PROPOSED COMPROMISE WITH WCP ET AL OR ALTERNATIVELY, TO APPROVE AGREEMENT TO SELL AND ASSIGN TO JASON PORCIER; AND NOTICE OF HEARING

William Douglas White, chapter 7 trustee of bankruptcy estate of ETS of Washington

LLC, (the "Trustee"), pursuant to 11 U.S.C. §§ 105, 363(b) and Federal Rules of Bankruptcy

Procedure 6004(a)-(c) and 9019 moves for entry of an order approving a compromise set forth in

Exhibit A attached hereto, between the Trustee on behalf of the Estate  and WCP et al[1] whereby

WCP et al will pay a cash amount of $60,000 to the Estate in return for dismissing A.P. 21-10005

with prejudice, agreeing to a mutual release and barring third parties from pursuing any released

---

[1] WCP et al refers collectively to WCP Fund I LLC, DP Capital LLC and 1Sharpe Opportunity Intermediate Trust.

claims against WCP et al.   Alternatively, if the foregoing compromise and settlement with WCP

et al is not approved by the Court, the Trustee proposes that the Court approve, as specifically set

forth in Exhibit B attached hereto, an Agreement to Sell and Assign A.P. 21-10005 to Jason

Porcier in return for payment to the Estate of (a) $10,500 already paid to the Trustee, (b) the first

$100,000 of any recovery resulting from the pursuit of the litigation in A.P. 21-10005 and (c)

and 60% of any remaining recovery from the litigation.

All interested persons seeking additional information are referred to Exhibits A and B  as

attached to this Motion.  Any person with additional questions may contact the undersigned.

Any creditor or interested person may file objections to one or both of the proposals set forth in

the Exhibits. Any creditor or interested person may also propose a higher or better offer of their

own.  **Any and all proposals seeking to make a higher or better offer than the proposals**

**attached to this Motion are encouraged.**

**PLEASE TAKE NOTICE THAT ON OR BEFORE FEBRUARY 28, 2023** if you

wish to object to the Motion and/or to propose a higher or better offer, you must file and serve

the same in writing, together with the proposed order required by Local Bankruptcy Rule 9072-1.

The objection or offer and proposed order must be filed with the Clerk of the U.S. Bankruptcy

Court, 3rd & Constitution Ave., NW, 1st Floor, Washington, D.C. 20001, and served by hand-

delivery or mail upon the undersigned at the address below.  An objection must contain a

complete specification of the factual and legal grounds upon which it is based, and affidavits and

documents in support may be attached.

IF YOU FAIL TO FILE A TIMELY RESPONSE, THE COURT MAY APPROVE THE

MOTION WITHOUT A HEARING.  The Court may also approve the Motion without a hearing,

in its discretion, if an objection filed fails to state adequate grounds to oppose the Motion.

Parties in interest with questions may contact the undersigned.

**NOTICE OF HEARING:  THE COURT WILL CONDUCT A HEARING REGARDING THE MOTION AND NOTICE ON MARCH 1, 2023 AT 11 A.M.  in Courtroom 1,  333 Constitution Ave NW, Washington DC 20001 or via video conference (contact Aimee_Mathewes@dcb.uscourts.gov for Zoom information). Interested parties may also consult the Clerk or the Court's Docket for more information**

WHEREFORE, for the foregoing reasons and for such further and additional reasons as may be presented hereafter or at the hearing on this matter, the Trustee requests that the Court approve the compromise and settlement with WCP et al set forth in the attached Exhibit A, or alternatively, in the event the settlement and compromise is not approved,  to approve the Agreement to Sell and Assign to Jason Porcier set forth in the attached Exhibit B.


Dated: 2/7/23                          Respectfully submitted,


                                       /s/ William Douglas White
                                       William Douglas White Trustee
                                       8205 Pettit Court
                                       McLean, VA 22102
                                       703-770-9265
                                       wdw@mccarthywhite.com
                                       Trustee for Estate

CERTIFICATE OF SERVICE

I hereby certify that on 2/7/ 2023 a copy of the foregoing was filed and sent through the court's ECF system to all registered ECF participants who have appeared in this case.

/s/ William Douglas White

## SETTLEMENT AGREEMENT

Subject to Bankruptcy Court approval, this Settlement Agreement (the "Agreement") is made as of the date upon which it is approved by the United States Bankruptcy Court for the District of Columbia (the "Effective Date"), by and between WCP Fund I LLC ("WCP"), DP Capital LLC ("DPCL"), 1Sharpe Opportunity Intermediate Trust ("1Sharpe") (WCP, DPCL, and 1Sharpe being collectively known as the "Secured Creditors") and the Bankruptcy Estate of ETS of Washington, LLC (the "Estate"), by and through its trustee, William Douglas White ("Trustee") (the Estate and/or the Trustee and the Secured Creditors being collectively known as the "Parties" and each sometimes known as a "Party").

WHEREAS, on September 28, 2020, ETS of Washington LLC (the "Debtor") filed a petition for relief, pursuant to Section 301 of Title 11 of the United States Code, and thereby commenced case number 20-00397 in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Case," with the court being known as the "Bankruptcy Court") as a debtor-in-possession under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on February 20, 2021, ETS of Washington LLC acting as a debtor-in-possession under Chapter 11 of the Bankruptcy Code filed an adversary proceeding against the Secured Creditors entitled ETS of Washington LLC v. WCP Fund I LLC, et al, being A.P. No. 21-10005 in the Bankruptcy Court (the "Adversary Proceeding,"); and

WHEREAS, on May 24, 2021, the Bankruptcy Court entered an order converting the Bankruptcy Proceeding to a case under Chapter 7 of the Bankruptcy Code; and

WHEREAS, on May 24, 2021, the Trustee was appointed interim trustee of the Estate, with such appointment being made permanent by order of the Bankruptcy Court September 23, 2021; and

1 of 9

WHEREAS, on September 14, 2021, WCP and DPCL filed a counterclaim, in the Adversary Proceeding, against the Estate and the Trustee (the "Counterclaim"); and

WHEREAS, there exists a desire between and amongst the Parties to amicably resolve all claims, causes, and actions – in the Adversary Proceeding (including the Counterclaim) and otherwise – that now exist, whether known or unknown, between each and any of the Secured Creditors on the one hand and each and any of the Trustee, the Debtor, and the Estate on the other hand;

IT IS NOW, THEREFORE, agreed by and between the Parties, and for their respective heirs, personal representatives, agents, officers, directors, members, equity holders, successors, abandonees, and assigns, if any, in consideration of the mutual covenants, promises, and agreements contained herein, the sufficiency and receipt of which is acknowledged by all Parties hereto, that:

1. **Payment**. Secured Creditors agree that the Trustee, as representative of the Estate, will be paid the sum of Sixty Thousand Dollars and No Cents ($60,000.00), in the lawful currency of the United States (the "Payment"), within three (3) business days of the date on which the Bankruptcy Court enters an order approving this Agreement (the "Approval Order"), and such order is not subject to any stay. Such payment will be in good funds and may be made by any one or more of the Secured Creditors or any one of their attorneys licensed in the District of Columbia using monies such attorney(ies) hold in trust for the benefit of any one or more of the Secured Creditors.

2. **Mutual Release.** Except as otherwise provided for herein, effective upon the last to occur of the entry of the Approval Order, the absence or expiration of any stay, and the Trustee's receipt of the Payment, the Parties do hereby settle, release, waive, remise and discharge each other

DocuSign Envelope ID: 60882951-EED2-427B-8DA8-48A9CA6E2210

from all causes of action, claims, rights, or demands, whatsoever, whether sounding in law or equity, whether known or unknown, whether direct or derivative, which any of the Parties have ever had against each other since the beginning of time through the Effective Date, provided however, this mutual release shall not apply to the proofs of claim (or the indebtedness represented by said proofs of claim) filed by Secured Creditors in the Bankruptcy Case, except the Secured Creditors agree to waive any monetary or other non-*in rem* recourse against the Trustee or the Estate on account of such claims and, rather, as to the Trustee and/or the Estate solely to pursue *in rem* recourse against the real property situated at 2207 Foxhall Road in Washington, D.C. (the "Foxhall Property").  For the avoidance of doubt, this release shall be construed in the broadest terms permitted by controlling law, and shall be inclusive of all claims, causes, and actions owned by the Debtor's Estate brought in the Adversary Proceeding and the Bankruptcy Case, as well as any claims, causes and actions – known or unknown – that could be brought by the Trustee against any one or more of the Secured Creditors or, except as otherwise provided herein, by one or more of the Secured Creditors against the Trustee and/or the Estate. This release includes, without limitation, any objection that could be interposed to proofs of claim filed by any or all of the Secured Creditors in the Bankruptcy Proceeding (subject to the limitation on said proofs of claim established herein); the Trustee expressly acknowledges the absence of any legal defense to said proofs of claim and, further, recognizes the validity of the Debtor's obligation to the Secured Creditors, as set forth in said proofs of claim. This release also includes all claims, causes and actions against one or more of the Secured Creditors that could be brought derivatively by the Trustee, the Estate and/or the Debtor through any third party, whether natural or legal, or by one or more of the Secured Creditors that could be brought derivatively against the Trustee, the Estate and/or the Debtor through any third party under any law, doctrine, ordinance, or other theory. This

DocuSign Envelope ID: 60BB23E1-EEB2-427B-BDA8-48A6CA6E2210

release shall equally apply to any claims, causes or actions acquired by the Trustee – or any agent

of the Trustee – or by one or more of the Secured Creditors – or any agent of one or more of the

Secured Creditors from any third party, whether acquired before or after the Effective Date, and

any such acquisition shall have the legal effect of extinguishing such claim(s), cause(s), and/or

action(s). Notwithstanding the foregoing, nothing herein shall waive or release (a) rights and

obligations of the Parties under this Agreement; or (b) claims or causes of action that are unrelated

to the Debtor, the Estate, the Bankruptcy Case or the Adversary Proceeding, it being understood

and acknowledged that the Trustee serves as trustee in other unrelated cases and proceedings,

which are unaffected by this Agreement. Additionally, and also notwithstanding the foregoing,

nothing herein shall be interpreted to constitute a release of any one or more of the Secured

Creditors against any other of the Secured Parties, nor of the Trustee, the Estate and/or the Debtor

against any of the Trustee, the Estate and/or the Debtor. Moreover, the Trustee acknowledges that

neither the Trustee nor the Estate nor the Debtor have any defenses to the foreclosure of the Foxhall

Property carried out by one or more of the Secured Creditors and, to the contrary, that the Trustee

and the Estate have no equitable interest in the Foxhall Property. Further, and also notwithstanding

the foregoing, nothing herein shall be interpreted to preclude any one or more of the Parties from

bringing an adversary proceeding, in the Bankruptcy Case, against the District of Columbia.

3.    **Third Party Bar.** The Parties shall seek to include in the Approval Order

provisions confirming that the release and waiver set forth in Section 2 of this Agreement shall

bind not merely the Parties, their directors, shareholders, members, officers, attorneys, agents,

successors, abandonees, subsidiaries, parents, affiliates, heirs and assigns, but shall, too, serve to

bar any third party on notice – whether actual or constructive – of the Bankruptcy Case, from

bringing any causes of action, claims, rights, or demands, whatsoever, whether sounding in law or

equity, against the Secured Creditors, in connection with any dealings of the Secured Creditors that are owned by the Debtor's Estate, and enjoining all third parties with notice of the Approval Order from commencing or continuing the prosecution of any released claim. This bar shall apply solely to causes of action, claims, rights, and demands concerning (i) the Debtor; (ii) the Debtor's business activities; (iii) administration of the Bankruptcy Proceeding; (iv) Foxhall Property; and/or (v) the Adversary Proceeding.

4.    **Tax Indemnification**. Except as provided in this section below, the Secured Creditors shall indemnify the Estate and the Trustee against: (a) any real estate taxes, fines or penalties due and owing to the District of Columbia, or any administrative subdivision thereof, in connection with the Estate's ownership of the Foxhall Property and/or the transfer of the Foxhall Property to or for the benefit of the Secured Creditors; and (b) any legal fees or costs of the Estate or the Trustee actually and reasonably incurs after the date of this Agreement in connection with claims of the District of Columbia in connection with the Foxhall Property. For the avoidance of ambiguity, it is the intent of the Secured Creditors to record a deed transferring ownership of the Foxhall Property to one of the Secured Creditors or their designee, and to pay such tax obligations at or before the time of said recordation. Equally, it is the intent of the Secured Creditors to challenge the tax classification of the Foxhall Property and, potentially, to raise such challenge through one or more instrumentalities made available in connection with the Bankruptcy Proceeding. Except as provided in this section below, the Secured Creditors' indemnification obligations shall apply with respect to any and all taxes, fines or penalties relating to the Foxhall Property that have been or may be determined to exist, whether such taxes, fines or penalties: (a) accrued pre-petition or post-petition; (b) are disputed or undisputed; (c) are subject to an existing or future proof of claim by any taxing or governmental authority; or (d) are secured or unsecured;

DocuSign Envelope ID: 60BB38F4-FEE2-427B-BDA8-48A6CA6C2210

provided, however, that indemnification obligations of the Secured Creditors shall not apply to any claim of the District of Columbia to the extent that such claim that is asserted as a non-priority general unsecured claim and, equally, the Secured Creditors shall have the right to promptly contest any claim through a proceeding (whether an adversary proceeding, contested motion, administrative proceeding, or otherwise) against the District of Columbia before being called upon to fulfill the obligations of indemnity set forth herein. Further, the Secured Creditors shall not be required to indemnify the estate for fees or costs to the extent that such fees or costs are incurred by the Estate or the Trustee in prosecuting an affirmative objection to the portion of any claim that is asserted as a non-priority general unsecured claim.

5. **Dismissal of Adversary Proceeding**. Within three (3) business days of the date on which the Bankruptcy Court enters an order approving this Agreement (the "Approval Order"), and such order is not subject to any stay. the Parties shall contemporaneously with the Payment to the Estate and the Trustee cause a joint stipulation of dismissal with prejudice, in the form attached hereto as Exhibit A, to be filed in the Adversary Proceeding.

6. **Retention of Jurisdiction.** The Parties agree, except as otherwise set forth above, that the Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any disputes concerning this Agreement or concerning any subject matter arising from or otherwise related to this Agreement irrespective of when the Case may be closed.

7. **Further Assurances.** The Parties may execute such further and additional documents as they determine are necessary to effectuate the terms of this Agreement.

8. **No Admission of Liability.** Neither the Secured Creditors nor the Trustee enter into this Agreement for purposes of admitting any liability and, to the contrary, this Agreement is

entered into solely out of a desire to resolve the Adversary Proceeding and related matters without incurring further efforts and expenses associated with said litigation.

9.      **Terminology.** When the masculine gender is used herein, it shall also mean the feminine gender, where appropriate, and the plural shall mean the singular, and vice-versa, where appropriate. The words "and" and "or" shall be construed as meaning "and/or" except where contextually inappropriate.

10.     **Entire Understanding.** This Agreement contains the entire understanding between the Parties.  No modification or waiver of any of the terms of this Agreement shall be valid unless made in writing and signed by the Parties in a manner no less formal than that with which this Agreement is executed.

11.     **No Waiver.** Any waiver or breach or default of this Agreement shall not be deemed a waiver of any subsequent breach or default.  If any Party fails in due performance of any of his or her obligations hereunder, the aggrieved Party shall have the right to sue for damages for the breach thereof, or to seek other legal remedies as may be available to him or her, and the defaulting Party shall pay the reasonable legal fees and expenses incurred by the aggrieved Party as a result of the breach.

12.     **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed to be an original instrument but all of which together shall constitute one agreement.  Signature pages transmitted via facsimile or by email in Portable Document Format (PDF) shall be deemed original signatures for all purposes. This Agreement may be executed in duplicate and the duplicate shall have the same force and effect as if it were the original copy. This Agreement may be executed by electronic means if done through a reputable third party purveyor

DocuSign Envelope ID: 60BB28FJ-EEE2-427B-BDA8-48A6CA6C2210

of electronic signatures, with DocuSign and Adobe expressly being such reputable third party purveyors.

13. **Governing Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the District of Columbia.

14. **Headings.** The headings used in this Agreement are for ease of reference only and shall not be deemed a substantive portion of this Agreement.

15. **Construction.** This Agreement shall be construed without regard to any presumption or other rule of law requiring construction against the party who caused it to be drafted.

16. **Judicial Approval.** This Agreement shall not become effective unless and until approved by the Bankruptcy Court; should such approval be denied with prejudice, this Agreement shall be regarded as void ab initio.

17. **Approval Motion.** The Trustee shall file a motion seeking entry of the Approval Order (the "Approval Motion") within five (5) business days following execution of this Agreement by all Parties. The Parties acknowledge and agree that the Trustee has fiduciary duties to the Estate to maximize the value of its assets, and that other persons may have an interest in competitively bidding to acquire (rather than release) the claims and causes of action that are the subject matter of Sections 2 and 3 of this Agreement. To avoid the need for unnecessary and duplicative proceedings, the Parties acknowledge and agree that the Approval Motion may include a request for alternative relief permitting the submission and consideration of alternative bids, without the need for the Trustee to submit a separate sale motion.

**[CONTINUED ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, and being fully advised by their attorneys in the premises, the Parties hereto have hereunder subscribed their names and seals to this Agreement.

WCP FUND I LLC

2/6/2023
_____
Date

By: Christina Araujo
Its: Officer or Manager

DP CAPITAL LLC

2/6/2023
_____
Date

By: Christina Araujo
Its: Officer or Manager

1SHARPE OPPORTUNITY INTERMEDIATE TRUST

2/6/2023
_____
Date

By: Christina Araujo
Its: Officer or Manager or that of its Servicer

_____
Date

William Douglas White, Trustee

DocuSign Envelope ID: 609B28F4-FEB2-427B-8DA8-48A6CA6C2210

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
Counsel for the Defendants/Counterclaimants

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 20-397-ELG |
| | ) | |
| ETS of Washington LLC | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | ) | |
| William White, In His Capacity as Trustee | ) | |
| of the Estate of ETS of Washington LLC | ) | Adversary Case No. 21-10005-ELG |
| | ) | |
| Plaintiff / Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WCP Fund I LLC, 1Sharpe Opportunity | ) | |
| Intermediate Trust, and DP Capital LLC | ) | |
| | ) | |
| Defendants / Counterclaimants. | ) | |

## JOINT STIPULATION OF DISMISSAL WITH PREJUDICE

Come now William White, in his Official Capacity as Trustee of the Estate of ETS of

Washington LLC (the "Trustee"), WCP Fund I LLC ("WCP"), DP Capital LLC ("DPCL"), and

1Sharpe Opportunity Intermediate Trust, by and through respective undersigned counsel, pursuant

to Federal Rule of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure

41(a)(1)(A)(ii), and hereby stipulate to dismissal of the above-captioned proceeding, inclusive of

the counterclaim filed herein, with prejudice.

DocuSign Envelope ID: 608B23E1-EEB2-427B-8DA8-48A6CA6E2B10

Respectfully submitted,

Dated:                                        By: _____
                                              Maurice B. VerStandig, Esq.
                                              Bar No. MD18071
                                              The VerStandig Law Firm, LLC
                                              1452 W. Horizon Ridge Pkwy, #665
                                              Henderson, Nevada 89012
                                              Phone: (301) 444-4600
                                              Facsimile: (301) 444-4600
                                              mac@mbvesq.com
                                              Counsel for the
                                              Defendants/Counterclaimants

                                              By: _____
                                              William Douglas White
                                              8205 Petit Court
                                              McLean, Virginia 22102
                                              Phone: (703) 770-9265
                                              wdw@mccarthywhite.com
                                              Chapter 7 Trustee of the Estate of
                                              ETS of Washington, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of _____, 2023, a copy of the foregoing

was served electronically upon filing via the ECF system on all counsel who have entered an

appearance herein.

                                              _____
                                              Maurice B. VerStandig

**EXHIBIT B**

## AGREEMENT TO SELL AND ASSIGN INTEREST

William Douglas White, the Chapter 7 Trustee of the Bankruptcy Estate of ETS of Washington LLC ("Trustee" or "Estate") and Mr. Jason Porcier ("Porcier"), the sole remaining principal of ETS of Washington, LLC, hereby agree that the Trustee will sell, assign, and transfer to Porcier the Estate's entire interest in Adversary Proceeding No. 21-10005 including all claims and pleadings asserted therein (the "Assets"), in consideration for and upon the terms and conditions set forth below.

1. The Trustee and the Estate will be removed as a party to A.P. 21-10005 and the claims asserted therein, and Porcier will be substituted for the Trustee and the Estate. Upon substitution, Porcier will pursue the litigation of the A.P. vigorously to its conclusion. To implement the foregoing change in A.P 21-10005, the Parties will seek simultaneously with this sale and assignment the entry of an order approving the Motion to Substitute Parties. This Agreement to Sell and Assign is contingent upon the Court granting the Motion to Substitute Parties. Upon approval of the Motion, the Trustee and Estate will no longer be a party in the litigation.

2. The Estate is currently holding $10,500 in good funds as a deposit. Pending Court approval of this Agreement, the Trustee will continue holding those monies in the Estate's bank account as a good faith deposit. Upon approval of this Agreement, such monies will become property of the Estate. In the event this Agreement is not approved by the Court, such deposit monies will be returned.

3. As further consideration for the sale and assignment, the Parties agree as follows:

a. Should the Estate be required to pay any amount pursuant to the Counterclaim in the A.P., the Estate first will be reimbursed in that same amount from the recovery under the

1

Complaint unless such amount   has already been satisfied by a set off against a recovery under the Adversary Complaint.

b.  The Estate will be paid the next $100,000 from any recovery under the Adversary Complaint.

c. In pursuing recovery on all claims and litigation sold and assigned pursuant to this Agreement, Porcier will  maintain qualified l e g a l  counsel and will advance all legal fees, costs and expenses as are reasonable and necessary.

d .   After the payments in a. and b. above, the Estate will be paid 60% of the remaining proceeds recovered in pursuing the above claims.

e.     Porcier will be paid 40% of the remaining proceeds..

fe.     Porcier shall not enter into a settlement of the Adversary Claims without the Trustees prior written consent, which shall not be unreasonably withheld, conditioned, or delayed.

5.    Upon the Court's approval of this Agreement to Sell and Assign, Jason Porcier and the Trustee on behalf of the Estate will execute a Transfer and Assignment  substantially in the form set forth as Attachment A and a Security Agreement sugstantially in the form set forth in Attachment B in favor of the Estate. Upon approval of this Agreement and execution of the Security Agreement, the assets sold and assigned and any proceeds or payment owing to the Estate will be subject to a lien in favor of the Estate for the full amount of the Estate's interest in the litigation.

6.    This Agreement is subject to Bankruptcy Court approval pursuant to entry of the parties' agreed Order implementing its term as attached hereto. The Bankruptcy Court will retain exclusive and continuing jurisdiction over this Agreement, its interpretation, and the resolution of any dispute with respect to this Agreement.

In witness whereof, the parties have executed this Agreement below.

*William Douglas White, Trustee*

William Douglas White, Trustee
8205 Pettit Court
McLean, VA 22102 (703) 770-9265
wdw@mccarthywhite.com
Date: _____

_____
Mr. Jason Porter
1455 Ocean Drive #1111
Miami Beach Florida 33139
603 498-8973
Date: _____2/7/23_____

3

**Attachment A**

**Bill Of Sale**

Pursuant to Order of the United States Bankruptcy Court entered
_____ in Case No. 20-397, William Douglas White, Trustee,
and in consideration of the payment of $10,500 and the other terms and
conditions of the Agreement to Sell and Assign hereby sells and assigns to
Jason Porcier the Bankruptcy Estate's interest in A.P. 21-10005 and all
claims asserted therein as more particularly set forth in that Agreement and
the Order of the Bankruptcy Court approving that Agreement.  The
foregoing sale and assignment is "as is" and "where is" with no warranties
expressed or implied.


_____
William Douglas White, Trustee
8205 Pettit Court
McLean, VA 22102
Telephone: 703-770-9265
Facsimile:  703-770-9266
wdw@mccarthywhite.com

COUNTY OF _____    ss;

I,_____, a Notary Public in and for the County of _____, do hereby certify that _____, personally well known to me (or satisfactorily proven) to be the person who executed the foregoing instrument bearing date on the ___ day of _____, 2015, personally appeared before me in the said County and acknowledged said instrument to be his act and deed, and that he executed said instrument for the purposes therein contained.

WITNESS my hand and official seal this ___ day of _____,_____.

_____
Notary Public

My Commission Expires:

**Attachment B**

Security Agreement

This Security Agreement (this "Agreement") is made as of _____ by the Jason Porcier (referred to herein as "Debtor") for the benefit of the Bankruptcy Estate of ETS of Washington LLC (referred to herein as "Secured Party") and the Debtor and Secured Party collectively being known as the "Parties").

This Agreement is entered into in connection with the Parties' Agreement to Sell and Assign Interest ("Sale Agreement") and other evidence of indebtedness to Secured Party described in the Sale Agreement and described herein,

1. DEFINITIONS.

   Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC").

2. GRANT OF SECURITY INTEREST.

   For value received, the Debtor grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3. OBLIGATIONS SECURED.

   This Agreement secures the payment and performance of all obligations made under Sale Agreement by Debtor and payable to the Secured Party in the amounts set forth in Sale Agreement, namely funds held by the Secured Creditor in the amount of $10,500 in the bankruptcy estate's bank account as well as all payments Debtor is required to make to the Secured Party pursuant to the provisions and under the conditions set forth in the Sale Agreement including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party

in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations. The Sale Agreement and all other obligations secured hereby are collectively called the "Obligations."

4. COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is the entire interest in A.P. 21-10005 and the claims asserted therein pending in the U.S. Bankruptcy Court for the District of Columbia and any proceeds generated by the interest in the litigation of that adversary proceeding and assertion of claims.

5. RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in t he Collateral without Secured Party's written approval, except that Debtor may liquidate that collateral under the terms of the Sale Agreement by recovery in or settlement of the adversary proceeding and claims arising from it.

6. MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Debtor must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes,

judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or

mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain

hazard insurance on the Collateral, with an insurance company and in an amount approved by

Secured Party (but in no event less than the replacement cost of that Collateral), and including

such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of

Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all

unearned premiums thereon and authorizes and empowers Secured Party to collect such sums

and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other

documents necessary for Secured Party to obtain such payments.

7. CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS,
   JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than 30

days before taking any of the following actions: (a) changing or reorganizing the type of

organization or form under which it does business; (b) moving, changing its place of business

or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its

name. Debtor will pay for the preparation and filing of all documents, Secured Party deems

necessary to maintain, perfect and continue the perfection of Secured Party's security interest

in the event of any such change.

8. PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured Party's filing or recording of any

documents necessary to perfect, continue, amend or terminate its security interest. Upon

request of Secured Party, Debtor must sign or otherwise authenticate all documents that

Secured Party deems necessary at any time to allow Secured Party to acquire, perfect,

continue or amend its security interest in the Collateral. Debtor will pay the filing and

recording costs of any documents relating to Secured Party's security interest.


9. DEFAULT.

Debtor is in default under this Agreement if: (a) Debtor fails to pay, perform or otherwise

comply with any provision of this Agreement or the Sale Agreement; (b) Debtor makes any

materially false representation, warranty or certification in, or in connection with, this

Agreement, the Sale Agreement, or any other agreement related to the Sale Agreement or this

Agreement; (c) another secured party or judgment creditor exercises its rights against the

Collateral; or (d) an event constituting a default under the Sale Agreement occurs. In the event

of default and if Secured Party requests, Debtor must assemble and make available all

Collateral at a place and time designated by Secured Party. Upon default and at any time

thereafter, Secured Party may in its sole discretion declare all Obligations secured hereby

immediately due and payable, and, in its sole discretion, may proceed to enforce payment of

same and exercise any of the rights and remedies available to a secured party by law including

those available to it under Article 9 of the UCC that is in effect in the jurisdiction where

Debtor or the Collateral is located. Secured Party has no obligation to clean or otherwise

prepare the Collateral for sale or other disposition and Debtor waives any right it may have to

require Secured Party to enforce the security interest or payment or performance of the

Obligations against any other person.


10.   GOVERNING LAW.

Debtor and Secured Party agree that this Agreement will be governed by the laws of the

jurisdiction where the collateral is located, including the UCC as in effect in such jurisdiction

and without reference to its conflicts of laws principles.

11.   Secured party rights.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

12.   SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

13.   DEBTOR CERTIFICATIONS.

Debtor certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority t o grant the security interest in the Collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

14.   DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes

jointly and severally obligated as a Debtor under this Agreement.

 

    IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be duly
executed on the day and year first above written.